UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

VANESSA W.,[1]

          Plaintiff,

    v.

SSA COMMISSIONER,

          Defendant.

Case No.  24-cv-08003-TSH

**ORDER RE:  CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 20, 22

## I.    INTRODUCTION

Plaintiff Vanessa W. moves for summary judgment to reverse the Social Security Administration's denial of her claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 20 ("Pl.'s Mot.").  The Commissioner cross-moves to affirm.  ECF No. 22 ("Def.'s Mot.").  Plaintiff filed a reply.  ECF No. 26 ("Pl.'s Reply").  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  For the reasons stated below, the Court **GRANTS** Plaintiff's motion and **DENIES** the Commissioner's cross-motion.[2]

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties consent to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 6, 7.

## II.    PROCEDURAL HISTORY

On November 15, 2021, Plaintiff filed an application for Social Security Supplemental Security Income (SSI) benefits, stating a disability onset date of April 30, 2020.[3]  Administrative Record (AR) 223–46.  Plaintiff later amended the alleged disability onset date to September 30, 2021.  AR 37.  Following denial at the initial and reconsideration levels, Plaintiff requested a hearing before an Administrative Law Judge (ALJ).  AR 33–67, 101–21.  An ALJ held a hearing on October 12, 2023, and issued an unfavorable decision on February 26, 2024.  AR 14–67.  The Appeals Council denied Plaintiff's request for review on September 16, 2024.  AR 1–6.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

## III.    ISSUES FOR REVIEW

Plaintiff raises three issues on appeal:  (1) whether the ALJ's finding that Plaintiff has no severe mental impairment is supported by substantial evidence; (2) whether the ALJ provides specific, clear and convincing reasons for rejecting the entirety of Plaintiff's testimony as unpersuasive; and (3) whether the ALJ articulates the factors of supportability and consistency as applied to the opinion of Laura Jean Catlin, PsyD.  Pl.'s Mot. at 1.  Plaintiff requests the Court remand with instructions to award benefits, or in the alternative, remand for further administrative proceedings.  *Id.* at 23–24.

In sum, the Court concludes that the ALJ erred in evaluating Plaintiff's testimony and the medical opinions.  Because these errors necessarily impacted the remainder of the ALJ's decision, reversal is warranted.

## IV.    STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited."  *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based on the application of improper legal standards.  *Id.*  Substantial means "more than a mere scintilla," but

_____

[3] Plaintiff filed a protective application on September 30, 2021.  AR 17, 37, 223.

United States District Court
Northern District of California

only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (cleaned up). Under this standard, which is "not high," the Court looks to the existing administrative record and asks, "whether it contains 'sufficient evidence' to support the agency's factual determinations." *Id.* at 102 (cleaned up).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citation omitted). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted). If "the evidence can reasonably support either affirming or reversing a decision," the Court must defer to the ALJ's decision. *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision must be upheld if the error is harmless, meaning "it is inconsequential to the ultimate nondisability determination, or that, despite the legal error, the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (cleaned up). But "[a] reviewing court may not make independent findings based on the evidence before the ALJ to conclude that the ALJ's error was harmless" and is instead "constrained to review the reasons the ALJ asserts." *Id.* (cleaned up).

## V.    DISCUSSION

### A.    Framework for Determining Whether a Claimant Is Disabled

A claimant is "disabled" under the Social Security Act (1) "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) (citing 42 U.S.C. § 1382c(a)(3)(A)

– (B)).  To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis.  *See* 20 C.F.R. § 404.1520(a)(1) (disability insurance benefits); *id.* at § 416.920(a)(4) (same standard for supplemental security income).  The claimant bears the burden of proof at steps one through four.  *Ford v. Saul*, 950 F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," defined as "work done for pay or profit that involves significant mental or physical activities."  *Id.* (quoting 20 C.F.R. § 404.1520(a)(4)(i)) (cleaned up).  Here, the ALJ determined Plaintiff had not performed substantial gainful activity since September 30, 2021, the protective application date.  AR 19.

At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," meaning "that it significantly limits the claimant's 'physical or mental ability to do basic work activities.'"  *Ford*, 950 F.3d at 1148 (quoting 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.  20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe impairments:  "a severe polysubstance use disorder (cocaine, methamphetamine, heroin) (20 C.F.R. § 416.920(c))."  AR 19.

At step three, the ALJ evaluates whether the claimant has an impairment or combination of impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); *id.* at Pt. 404 Subpt. P, App. 1.  The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity."  *Id.* at § 404.1525(a).  Each impairment is described in terms of "the objective medical and other findings needed to satisfy the criteria of that listing."  *Id.* at § 404.1525(c)(3).  "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (emphasis in original) (footnote omitted).  If a claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent to the criteria of the diagnosis, he is conclusively presumed to

United States District Court
Northern District of California

4

be disabled, without considering age, education and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined Plaintiff did not have an impairment or combination of impairments that meets the listings.  AR 20.

If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses the claimant's residual functional capacity (RFC), defined as the most the claimant can still do despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to perform past relevant work, defined as "work that [the claimant has] done within the past five years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it." 20 C.F.R. § 404.1560(b)(1)(i).  If the ALJ determines, based on the RFC, that the claimant can perform past relevant work, the claimant is not disabled.  *Id.* at § 404.1520(f).  Here, the ALJ determined Plaintiff has no past relevant work.  AR 25.  The ALJ determined Plaintiff has the RFC "to perform a full range of work at all exertional levels but with the following nonexertional limitations:  the claimant is limited to performing simple, routine tasks, and making only simple work-related decisions." AR 22.  The ALJ determined "[t]ransferability of job skills is not an issue because the claimant does not have past relevant work." AR 25.

At step five, the burden shifts to the agency to prove that "'the claimant can perform a significant number of other jobs in the national economy.'" *Ford*, 950 F.3d at 1149 (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20 C.F.R. Pt. 404 Subpt. P, App. 2,[4] or on the testimony of a vocational expert.  *Ford*, 950 F.3d at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion testimony in response to a hypothetical question about whether a person with the physical and mental limitations imposed by

---

[4] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114–15 (9th Cir. 2006) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1101 (9th Cir. 1999)).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors:  a claimant's age, education, previous work experience, and physical ability.  *Id.*  "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements." *Id.*

the claimant's medical impairment(s) can meet the demands of the claimant's previous work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). An ALJ may also use other resources such as the Dictionary of Occupational Titles (DOT).[5] *Id.* Here, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, including kitchen helper (DOT 318.687-010), laundry worker II (DOT 361.685-018), and stores laborer warehouse (DOT 922.687-058). AR 26. As such, the ALJ determined Plaintiff was not disabled. AR 27.

## B.    Severity of Plaintiff's Mental Impairment

Plaintiff argues that "the ALJ's step two severity finding that Plaintiff has no severe mental impairment is not based on substantial evidence" because (1) the "ALJ cites *no* evidence in support of his finding that Plaintiff has no severe mental impairment"; and (2) the "ALJ otherwise ignores all evidence that Plaintiff *does* have a severe mental impairment." Pl.'s Mot. at 7–9 (emphasis in original).

### 1.    Legal Standard

At step two of a Social Security disability inquiry, "the ALJ assesses whether the claimant has a medically severe impairment or combination of impairments that significantly limits his ability to do basic work activities." *Webb v. Barnhart,* 433 F.3d 683, 686 (9th Cir. 2005) (citing 20 C.F.R. § 404.1520(a)(4)(ii)). "[A]n impairment or combination of impairments may be found not medically severe *only if* the evidence establishes a slight abnormality that has no more than minimal effect on an individual's ability to work." *Id.* (emphasis in original) (cleaned up). This evaluation at step two is a *de minimis* test intended to "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). Under this standard, an ALJ may find that a claimant lacks a medically severe impairment or combination of impairments *only if* his conclusion is "clearly established by medical evidence." *Webb,* 433 F.3d at 687 (quoting *Titles II*

---

[5] The DOT classifies jobs by their exertional and skill requirements. *See* 20 C.F.R. § 404.1566(d)(1); *Wischmann v. Kijakazi*, 68 F.4th 498, 502 (9th Cir. 2023) ("Although criticized as having many outdated job descriptions, the DOT is typically the starting point for VEs to identify the occupations relevant for each claimant's residual functional capacities.") (cleaned up); *Pinto v. Massanari*, 249 F.3d 840, 845 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the Dictionary of Occupational Titles.").

*& XVI: Med. Impairments That Are Not Severe*, SSR 85-28 (S.S.A. 1985)).  The burden of proving that an impairment is severe rests with the claimant.  *Tidwell v. Apfel,* 161 F.3d 599, 601 (9th Cir. 1999); *see Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987) (noting the claimant bears the burden of showing "at step two that he has a medically severe impairment or combination of impairments").

For mental impairments, "the reviewer must determine whether an applicant has a medically determinable mental impairment, rate the degree of functional limitation for four functional areas, determine the severity of the mental impairment (in part based on the degree of functional limitation), and then, if the impairment is severe, proceed to step three of the disability analysis to determine if the impairment meets or equals a specific listed mental disorder." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011) (citing 20 C.F.R. §§ 404.1520a(b), (c)(1) – (2)) (cleaned up).  The four functional areas that must be rated are:  (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself.  20 C.F.R. § 404.1520a(c)(3).

### 2.    Analysis

In determining whether an impairment is severe, an ALJ must engage in "a careful evaluation of the medical findings which describe the impairment(s) and an informed judgment about its (their) limiting effects on the individual's physical and mental ability(ies) to perform basic work activities[.]"[6]  SSR 85-28.  A medically determinable impairment "must be established by objective medical evidence from an acceptable medical source."  20 C.F.R. § 404.1521.

Here, Plaintiff states that she became unable to work in January 2011, due to "bipolar, schizophrenia, anxiety, and depression."  AR 224.  The ALJ found that Plaintiff's

> allegations [*sic*] psychological impairments, including schizophrenia, bipolar, anxiety, and depression (1E/2), are not severe impairments because there also is no probative evidence that these impairments

---

[6] Basic work activities are defined as the abilities and aptitudes necessary to do most jobs, such as: (1) walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) adapting to changes in a routine work setting.  *See* 20 C.F.R. §§ 404.1522(b), 416.922.

United States District Court
Northern District of California

more than minimally affect the [Plaintiff's] ability to perform basic work functions, or that they have caused limitations for a continuous period of twelve months or more.

AR 19.

Plaintiff argues that because the Commissioner "ignores Plaintiff's argument that the ALJ failed to cite to any specific medical evidence in support of the ALJ's finding that Plaintiff's mental illness is not severe," the Commissioner has waived the argument. Pl.'s Reply at 2. The Court agrees.

The Commissioner waives—and thus concedes—an argument by failing to respond to a plaintiff's argument put forth in the plaintiff's motion. *See Stanley v. O'Malley,* No. 24-cv-08776-RS, 2025 WL 2263832, at *4 (N.D. Cal. Aug. 7, 2025) ( "In failing to respond to the merits of Plaintiff's claims, the Commissioner has waived those issues."); *Lloyd B. v. O'Malley*, No. 23-cv-05010-DMR, 2024 WL 4557333, at *4 (N.D. Cal. Oct. 22, 2024) ("The Commissioner does not respond to this argument in his motion and thus concedes it."); *Arik v. Astrue*, No. C-08-5564-SBA, 2010 WL 2557493, at *3 (N.D. Cal. June 21, 2010) ("[T]he Commissioner waived this argument by failing to raise it in his opposition to Plaintiff's motion for summary judgment."); *Jenna R. v. Comm'r Soc. Sec. Admin.*, No. 6:24-cv-01221-AR, 2025 WL 1144751, at *3 (D. Or. Apr. 18, 2025) ("As this court previously has concluded, the Commissioner's failure to respond to a claimant's arguments constitutes a waiver."). Upon the Commissioner's waiver, a court should conclude that the ALJ erred in areas identified by a plaintiff for which the Commissioner fails to respond. *Krista B. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-cv-01822-HL, 2021 WL 5235969, at *4 (D. Or. Nov. 10, 2021). This waiver rule is grounded in fairness—a claimant should not be forced to relitigate issues that the Commissioner declines to independently review and assess. *Id.*; *see also Jenna R.*, 2025 WL 1144751, at *4 ("By refusing to undertake an analysis of plaintiff's arguments, and agreeing only to remand for additional proceedings, the Commissioner seeks a mulligan or 'do over.'").

The Commissioner contends that the "medical records supported the ALJ's step two determination." Def.'s Mot. at 3. However, the Court may only affirm the ALJ's finding based on reasons offered by the ALJ, so the Court does not consider the Commissioner's post hoc

reasoning.  *See Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947) ("[A] reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency.").  And the Commissioner fails to respond to Plaintiff's argument that the ALJ's step two analysis is devoid of any reference to Plaintiff's medical evidence.  *See id.* at 1–7; Pl.'s Mot. at 7–9.  Therefore, the Court finds that the Commissioner waived this argument.  *See Dwight F. v. O'Malley*, No. 22-cv-07218-DMR, 2024 WL 3580823, at *3 (N.D. Cal. July 29, 2024) ("With respect to Plaintiff's argument that the ALJ erred in finding his mental impairments non-severe, the court finds that the Commissioner failed to respond to the argument and thus concedes it.").  As such, the Court finds that the ALJ erred at step two in concluding that Plaintiff's mental impairments are not severe.  This error was not harmless because the ALJ's decision makes clear that all of the non-exertional limits he included in Plaintiff's RFC were for her polysubstance use disorder.  *See* AR 25 ("[T]he effects of the claimant's polysubstance use disorder limit her to performing simple, routine, work with only simple work-related decisions, at all exertional levels."); *cf. S.W. v. O'Malley*, No. 24-cv-00248-SVK, 2024 WL 3580825, at *4 (N.D. Cal. July 30, 2024).

**C.    Subjective Complaints**

Plaintiff argues that the ALJ fails to provide specific, clear and convincing reasons for rejecting the entirety of Plaintiff's testimony as unpersuasive because (1) "the ALJ failed to identify any specific testimony of Plaintiff as unsupported by or inconsistent with the record"; (2) "Plaintiff's lack of treatment is not a valid basis to discount a Plaintiff's credibility"; and (3) "contrary to the ALJ's claim, the medical evidence does indeed include medical diagnoses indicating Plaintiff suffers from bipolar disorder and schizophrenia."  Pl.'s Mot. at 9–15.

**1.    Legal Standard**

The Ninth Circuit has established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited:

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms

United States District Court
Northern District of California

alleged. In this analysis, the claimant is *not* required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof.

If the claimant satisfies the first step of this analysis, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. This is not an easy requirement to meet: The clear and convincing standard is the most demanding required in Social Security cases.

*Garrison*, 759 F.3d at 1014–15 (emphasis in original) (cleaned up). Under this standard, "the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (cleaned up). "In other words, to reject the specific portions of the claimant's testimony that the ALJ has found not to be credible, we require that the ALJ provide clear and convincing reasons relevant to that portion." *Smith v. Kijakazi*, 14 F.4th 1108, 1113 (9th Cir. 2021); *see also Lambert v. Saul,* 980 F.3d 1266, 1268 (9th Cir. 2020) ("[T]he ALJ must identify the specific testimony that he discredited and explain the evidence undermining it.").

### 2.    Analysis

Here, Plaintiff testified that she is homeless; she prefers to isolate from everyone; she has suffered from anxiety and depression consistently since age 10 or 11; she speaks to people in a rude or disrespectful way, but this should be okay because of freedom of speech; she does not do anything for herself but instead relies on her sister to do everything for her; she does not like to go places where there are too many people; she gets into physical fights "every day" but had not had a fight in "like two weeks"; she usually starts fights with other people, both those she knows and strangers; and she fights with other people whether she is sober or on drugs. AR 41–54, 62–64.

The ALJ summarized Plaintiff's testimony as follows:

At the hearing, the claimant testified that she uses/has used crack cocaine, heroin, and crystal methamphetamine. At the time of the hearing, claimant stated that she has not used crack cocaine for about a year and had not used heroin or crystal methamphetamine for about a month-and-a-half. The claimant testified that she was prescribed Risperdal, Depakote, and Remeron while she was incarcerated that helped with her psychological symptoms. She stated that, despite

> taking medication, she still experienced depression and anxiety. Her depression and anxiety began when she was very young. She testified that she has anger issues and has difficulty getting along with other people. The claimant testified that she has difficulty paying attention and often needs things repeated or demonstrated to her.

AR 22. The ALJ rejected Plaintiff's testimony because

> [Plaintiff] has not generally sought treatment for her alleged mental impairments, and the medical evidence for the relevant time period does not contain diagnoses, let alone clinical and objective findings, which demonstrate that [Plaintiff] suffers from a disabling mental condition(s).

AR 23.

The ALJ found that Plaintiff's "medically determinable impairment could reasonably be expected to cause the alleged symptoms," but did not make any findings that Plaintiff was malingering. *See* AR 22–23. Thus, to find Plaintiff's testimony not credible, the ALJ was required to "mak[e] specific findings as to credibility and stat[e] clear and convincing reasons for each." *Robbins v. Social Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006).

Plaintiff argues that the Commissioner's failure to respond to Plaintiff's argument "that the ALJ failed to specifically identify Plaintiff's testimony deemed unpersuasive as required by the Ninth Circuit" constitutes waiver. Pl.'s Reply at 4. The Court agrees. While the Commissioner asserts that the Court should uphold the ALJ's determination to discount Plaintiff's testimony because the "ALJ considered the entirety of Plaintiff's medical records and other evidence in assessing her subjective symptom testimony," the Commissioner does not respond to Plaintiff's argument that the ALJ failed to identify *what testimony* was not credible. Def.'s Mot. at 8–14; *cf. Jenna R.*, 2025 WL 1144751, at *3 ("Although the Commissioner identifies what it characterizes as specific inconsistencies in plaintiff's testimony, it nowhere argues that the ALJ's rationale for discounting her testimony is clear and convincing, or grapples with plaintiff's arguments about why the ALJ's reasoning fell short."). Tellingly, the Commissioner does not engage with Plaintiff's cited authority from the Ninth Circuit requiring an ALJ to identify specific testimony and specific evidence undermining that testimony. *See* Def.'s Mot. at 8–14; Pl.'s Mot. at 9–10. Therefore, the Court finds that the Commissioner waived this argument. *See, e.g., Lloyd B.*, 2024 WL 4557333, at *4 ("The Commissioner does not respond to this argument in his motion and thus

11

concedes it."). As such, the Court finds that the ALJ erred in failing to identify specific portions of Plaintiff's testimony that he found not credible. *See Berry*, 622 F.3d at 1234 (requiring the ALJ to "identify what testimony is not credible"); *Smith*, 14 F.4th at 1113 (requiring the ALJ to provide clear and convincing reasons for "reject[ing] the specific portions of the claimant's testimony that the ALJ has found not to be credible"); *Lambert,* 980 F.3d at 1277 (holding ALJ erred where she "never identified *which* testimony she found not credible, and never explained *which* evidence contradicted that testimony") (emphasis in original).

Accordingly, it is undisputed that the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. As discussed further below, this error was not harmless because it impacted the ALJ's determination that Plaintiff could perform jobs in the national economy.

**D.    Medical Opinions**

Plaintiff argues that the ALJ's persuasiveness finding regarding the opinion of Dr. Catlin is not supported by substantial evidence because (1) "the ALJ fails to cite any evidence that contradicts Dr. Catlin's opinion"; (2) "lack of treatment is not a valid reason to discredit the Catlin opinion"; (3) "the ability to undergo a psychological evaluation is not dispositive of marked impairment in interacting with others"; (4) "Dr. Catlin's cognitive testing is not dispositive of marked limitations"; (5) "the ALJ's claim that Dr. Catlin did not explain her findings is false"; (6) "seeking emergency care is not a valid reason to reject Dr. Catlin's opinion"; (7) "the ALJ's claim that Dr. Catlin relied heavily on Plaintiff's subjective complaints is false"; and (8) "the 12-month durational requirement, substance use and pregnancy care are not legitimate reasons to discount Dr. Catlin's opinion." Pl.'s Mot. at 15–23.

**1.    Legal Standard**

For Social Security claims filed after March 27, 2017, the ALJ is required to assess the persuasiveness of medical opinions in the record using the regulations outlined in 20 C.F.R. §§ 404.1520c and 416.920c. *See Woods*, 32 F.4th at 791–93 (embracing the Commissioner's new regulatory framework for evaluating medical opinions). Under these new regulations, the ALJ is asked to consider five factors: (1) supportability, (2) consistency, (3) relationship with the

United States District Court
Northern District of California

12

claimant, (4) specialization, and (5) other facts including but not limited to a medical source's familiarity with the other evidence in the claim or an understanding of the disability program's policies and evidentiary requirements. *See* 20 C.F.R. §§ 404.1520c(c)(1) – (5), 416.920c(c)(1) – (5). Of these five, the ALJ must address supportability and consistency in each assessment and may, but is not required to, explain how they considered the remaining three factors. *See id.* at §§ 404.1520c(b)(2), 416.920c(b)(2).

"Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence." *Woods*, 32 F.4th at 791–92 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1) ("The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be."). "Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." *Woods*, 32 F.4th at 792 (cleaned up); *see* 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.").

The new regulations replace the former hierarchy of medical opinions and no longer require the ALJ to give greater weight to the medical opinions of treating physicians. *Woods*, 32 F.4th at 787; *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). Now, the ALJ is free to consider the medical opinions equally and may find an opinion more persuasive than others provided that substantial evidence supports such a finding. *Woods*, 32 F.4th at 787. Substantial evidence will be found when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek*, 587 U.S. at 103. When rejecting a medical opinion as unsupported or inconsistent, the ALJ is required to provide an explanation supported by

13

substantial evidence. *Woods*, 32 F.4th at 792. If the ALJ does so, then a court may not overturn the ALJ's decision "unless it is either not supported by substantial evidence or is based upon legal error." *Luther v. Berryhill*, 891 F.3d 872, 875 (9th Cir. 2018).

### 2. Analysis

Here, Dr. Catlin performed the following during her evaluation of Plaintiff: review of Plaintiff's Highland Hospital medical records from 2015–2023; clinical interview; mental status examination; Montreal Cognitive Assessment; Beck Depression Inventory; PCL-5 PTSD checklist for DSM-5. AR 1503. Based on her assessment, Dr. Catlin offered the following diagnoses for Plaintiff: major depressive disorder (recurrent, severe); PTSD; mild cognitive impairment; opioid use disorder (remission unknown); stimulant use disorder (moderate); alcohol use disorder; substance induced bipolar and related disorder. AR 1507–08. Dr. Catlin opined that Plaintiff has mostly marked limitations in all domains of functioning and that Plaintiff would be absent four or more days per month and be off task more than 20% of the time. AR 1511–13. Dr. Catlin further opined that Plaintiff's "mental health condition and her impairments and inability to function in the work place would still exist in even in the absence of her substance use disorder." AR 1510.

Dr. Catlin explained that testing indicated "some impairment with [Plaintiff's] cognitive functioning" and "disturbances in memory and executive functioning." *Id.* According to Dr. Catlin, Plaintiff

> will have great difficulty performing well and consistently in the work place. [She] will have great difficulty understanding, remembering and/or applying information given to her. [She] will have difficulty getting along with coworkers, taking instruction from a manager or supervisor, and difficulty working with the public. Her mental health symptoms will make interacting with others very difficult. Her PTSD and depressive symptoms prime her to be more irritable, emotionally sensitive, and unable to navigate most social interaction in an appropriate manner. Her paranoia and distrust of other people will cause conflicts in the work setting.

*Id.*

The ALJ found the opinion of Dr. Catlin unpersuasive. AR 24. Regarding Dr. Catlin's opinion, the ALJ stated:

> I find the August 26, 2023 opinion of Dr. Catlin (13F) unpersuasive.

14

Dr. Catlin provided an extensive summary of the claimant's allegations regarding her mental health and performed a mental status examination (MSE) and psychological testing at the request of the claimant's representative in support of claimant's application for benefits. As stated previously, based on her evaluation, Dr. Catlin diagnosed the claimant with a major depressive disorder (MDD), posttraumatic stress disorder (PTSD), a mild cognitive impairment, substance use disorders, and a substance induced bipolar and related disorder. (13F/2-7) Dr. Catlin also found mostly 'marked' (defined as a seriously limited ability to function) limitations in all 4 categories of the 'B criteria'. (13F/10-12) However, I find Dr. Catlin's assessment of such significant limitations to be an underestimate of the claimant's overall functionality, inconsistent with the claimant's lack of treatment, as well as internally inconsistent with many of Dr. Catlin's own observations. For example, Dr. Catlin assessed that the claimant has a 'marked' limitation in her ability to 'initiate or sustain a conversation' and to '[u]nderstand and respond to social cues' (13F/11) despite noting that the claimant was 'engaged in the evaluation and able to sustain her attention' with clear, coherent, spontaneous, and 100% intelligible speech (13F/4). On MSE, the claimant appeared depressed and anxious, with limited insight and judgment; however, the remainder of the MSE was generally normal. (13F/4)

Moreover, many of the categories for which Dr. Catlin assessed 'marked' limitations, for example '[d]escrib[ing] work activity to someone else' '[r]ecogniz[ing] a mistake and correcting it', [i]dentify[ing] and solving problems', '[a]sk[ing] for help when needed', etc., were simply not reflected in testing or well-supported by explanation in Dr. Catlin's ultimate assessment narrative. Additionally, in some of the instances summarized herein, claimant demonstrated her ability to ask for help by seeking emergency care. Thus, Dr. Catlin's, mostly conclusory findings (13F/7-13) appear to rely heavily on the claimant's subjective complaints of severe symptomology, which is not reflected in the record on the whole. Furthermore, even if some marked limitations of function were supported on the day of the exam, the totality of the medical evidence does not indicate that such marked limitations lasted for 12 months, or that they were not significantly affected by current substance use. Dr. Catlin noted that the claimant 'admitted she is still using alcohol and methamphetamine.' (13F/4) In short, I find Dr. Catlin's opinion based on her brief, onetime assessment of the claimant to be unpersuasive. Quite tellingly, despite Dr. Catlin finding so many marked limitations, medical providers treating the claimant have only generally counseled on the effects of drug use on prenatal and postpartum care—without much with regard to other mental health disorders.

AR 24–25 (alterations in original).

Overall, Plaintiff argues that the ALJ failed to articulate the required factors of supportability and consistency because "the ALJ did not explain any relevant objective medical evidence which supports the rejection of Dr. Catlin's opinion." Pl.'s Mot. at 17; *see also id.*

15

("[T]he ALJ fails to cite even one page out of 1,153 possible pages of medical evidence (CAR 363–1515) as supporting evidence for any of the ALJ's proffered reasons for rejecting the opinion of Dr. Catlin.").  The Commissioner responds that the ALJ's reasoning that Dr. Catlin's opinion was inconsistent with the "totality of the medical evidence" is supported by the ALJ's discussion of and citation to several medical records.  Def.'s Mot. at 15 (asserting that the ALJ (at AR 25) cites to AR 832, 861, 977, 979, 982, 984, 986, 1107, 1145, 1362, 1458, and 1467).[7]  The problem with this argument—as identified by Plaintiff—is that "the ALJ did not cite to any page of the record as inconsistent with the opinion of Dr. Catlin."  Pl.'s Reply at 7.  Therefore, the Court agrees with Plaintiff that the ALJ erred in evaluating Dr. Catlin's opinion because the ALJ failed to address the consistency factor.  *See Thomas S. v. Comm'r of Soc. Sec.*, No. C21-05213-MAT, 2022 WL 268844, at *4 (W.D. Wash. Jan. 28, 2022) (finding error where "the ALJ failed to address whether [doctor's] opinion is more or less consistent 'with the evidence from other medical sources and nonmedical sources in the claim' and why [doctor's] opinion was more or less persuasive pursuant to the consistency factor"); *cf. Jalissa P. v. Bisignano*, No. 24-cv-06465-SI, 2025 WL 2682578, at *8 (N.D. Cal. Sept. 19, 2025) ("Under the regulations, it was error for the ALJ not to address the supportability factor.").  Indeed, the medical evidence in the record indicates that multiple clinicians documented that Plaintiff was diagnosed with mental health disorders immediately before or during the relevant time period, consistent with Dr. Catlin's findings.  *See* AR 705, 956–58, 964, 1419, 1457, 1466, 1508.  But the ALJ does not address this evidence.  And none of the other medical opinions or prior administrative findings are inconsistent with Dr. Catlin's opinion; these opinions merely state that there is insufficient evidence to evaluate Plaintiff's mental health impairments.  *See* AR 68–95.  Importantly, the ALJ does not address the additional evidence gathered by Dr. Catlin's clinical assessment, cognitive testing, psychological inventories, and mental status examination and how that evidence was not available to the other

---

[7] Even had the ALJ cited to these pages in the record, it is unclear how they would support the ALJ's finding that Dr. Catlin's opinion was unpersuasive for lack of consistency.  None of these medical records indicate that Plaintiff *does not* have a mental health condition; thus, none are inconsistent with Dr. Catlin's opinion.  In fact, one of the records lists "bipolar disorder" as one of Plaintiff's diagnoses and notes that Plaintiff has "schizophrenia."  *See* AR 1459.

clinicians who offered opinions regarding Plaintiff's mental health conditions.

Accordingly, the Court concludes that the ALJ erred in his consideration of Dr. Catlin's opinion and in his articulation of the medical evidence in the record.  As discussed further below, this error was not harmless because it impacted the ALJ's determination that Plaintiff could perform jobs in the national economy.

**E.      Remedy**

The remaining question is whether to remand for further administrative proceedings or for the immediate payment of benefits.  *See G.P. v. Dudek*, No. 24-cv-00088-VKD, 2025 WL 945813, at *4 (N.D. Cal. Mar. 28, 2025) ("If the Court determines that there has been reversible legal error, the Court must then decide whether to remand for further proceedings or for an automatic award of benefits.").  The Social Security Act permits courts to enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g); *see also Garrison*, 759 F.3d at 1019 ("Accordingly, every Court of Appeals has recognized that in appropriate circumstances courts are free to reverse and remand a determination by the Commissioner with instructions to calculate and award benefits.").  "[W]here the record has been developed fully and further administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits."  *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

"In determining whether to remand for benefits, the Ninth Circuit has devised a 'three-part credit-as-true standard.'"  *Dwight F.*, 2024 WL 3580823, at *2 (citing *Garrison*, 759 F.3d at 1020).   Courts use the credit-as-true rule to take subjective symptom testimony or medical opinion evidence "to be established as true."  *Garrison*, 759 F.3d at 1019–20.  Under the following tripart credit-as-true standard, each part must be satisfied for a court to remand to an ALJ with instructions to calculate and award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose;
>
> (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and

(3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020; *see Trevizo v. Berryhill*, 871 F.3d 664, 683 (9th Cir. 2017) ("We conclude that each of the credit-as-true factors is satisfied and thus that remand for the calculation and award of benefits is warranted.").

However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther*, 891 F.3d at 877 (cleaned up). It is only "rare circumstances that result in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon v. Berryhill*, 880 F.3d 1041, 1047 (9th Cir. 2017).

Here, Plaintiff requests that the Court remand with instructions to award benefits pursuant to 42 U.S.C. § 405(g). Pl.'s Mot. at 23. The Commissioner objects to the Court applying the credit-as-true rule to Plaintiff's testimony and to Dr. Catlin's opinion, but "acknowledges that the credit-as-true rule is part of this Circuit's law[.]" Def.'s Mot. at 18 n.6. The Commissioner further argues that an award for immediate benefits is not warranted because of "[t]he inconsistency between Plaintiff's subjective complaints and the overall evidence, including the objective clinical findings, Plaintiff's improvement with treatment, and her capacity to perform daily activities[.]" *Id.* at 19.

The Court finds that remand for the calculation and award of benefits is warranted. *Cf. Jalissa P.*, 2025 WL 2682578, at *13–14 (remanding for an immediate award of benefits after crediting as true plaintiff's testimony and medical opinions). First, the record is extensive. It contains hundreds of pages of medical records dating back over ten years and includes treatment notes documenting several doctors' visits addressing Plaintiff's various medical and mental health conditions immediately before or within the relevant time period. *See* AR 363–1515; *cf. Trevizo*, 871 F.3d at 683.[8] The record also reflects Plaintiff's testimony before the ALJ, her responses to

_____

[8] While the plaintiff in *Trevizo* had "more than 50 doctors' visits" within the relevant time period, Plaintiff's treatment notes here are likewise extensive given her circumstances. *See Trevizo*, 871

numerous questionnaires about her physical and mental limitations, and the medical opinion of an examining clinician, all of which corroborate her impairments. *See* AR 38–64, 281–88, 1502–15; *cf. Trevizo*, 871 F.3d at 683. Moreover, the Vocational Expert (VE) specifically opined regarding the inability of an individual with Plaintiff's psychological and intellectual limitations as described by Plaintiff's testimony and by Dr. Catlin to sustain work. *See* AR 64–65; *cf. Trevizo*, 871 F.3d at 683.

Second, as discussed, the ALJ failed to provide legally sufficient reasons for rejecting the entirely of Plaintiff's testimony and the medical opinion of Dr. Catlin. Thus, the Court credits the evidence as true for this analysis. *Cf. Benecke*, 379 F.3d at 594 ("Because the ALJ failed to provide legally sufficient reasons for rejecting Benecke's testimony and her treating physicians' opinions, we credit the evidence as true.").

Finally, "[c]rediting the discredited testimony as true, there is no doubt as to plaintiff's disability." *Jalissa P.*, 2025 WL 2682578, at *14. "The Ninth Circuit has consistently remanded for an award of benefits in cases where a VE was posed a hypothetical that included the RFC that a claimant would possess if improperly discredited opinions or testimony were taken as true." *Tennille S. v. Kijakazi*, No. 21-cv-09779-SI, 2023 WL 122396, at *13 (N.D. Cal. Jan. 6, 2023). Such is the case here. If credited as true, Plaintiff's testimony establishes that she is disabled because the VE testified that someone with Plaintiff's limitations would be unable to find full-time work. *See* AR 22 (ALJ stating that Plaintiff "testified that she has difficulty paying attention and often needs things repeated or demonstrated to her"), 62–64 (Plaintiff testifying that she gets into physical fights every day, she has not been in a fight for two weeks, and she started a fight with a stranger that past July), 64 (VE testifying that getting "into physical alterations with anybody at the workplace . . . two times in the year" "would not be tolerated in competitive employment"), 64–65 (VE testifying that there would be "no jobs" for someone "unable to understand, remember and carry out simple instructions"); *cf. Stanley*, 2025 WL 2263832, at *7 ("Had this evidence been

F.3d at 683; Pl.'s Mot. at 14 ("While the record does not contain the type of mental health treatment records that someone with a stable home and health insurance might have, multiple clinicians indicated diagnoses of mental conditions in the medical evidence of record immediately before or during the relevant time period.").

*United States District Court*
*Northern District of California*

correctly weighed, the ALJ would have had to conclude, in keeping with the vocational expert's testimony, that there are not significant numbers of jobs in the national economy that Plaintiff can perform."). The same is true for Dr. Catlin's opinion. *See* AR 1511–13 (Dr. Catlin opining that Plaintiff has mostly marked limitations in all domains of functioning and that Plaintiff would be absent four or more days per month and be off task more than 20% of the time); 64–65 (VE testifying that there would be "no jobs" for someone "off task more than 15%" of the time, for someone who "would miss more than two days of work per month," and for someone "unable to understand, remember and carry out simple instructions").

Moreover, there is no "serious doubt" based on "an evaluation of the record as a whole" that Plaintiff is, in fact, disabled. *Garrison*, 759 F.3d at 1021. Plaintiff has severe mental health conditions that result in marked mental impairments, impaired cognitive functioning, an extensive history of physical, emotional, and sexual trauma, and almost no job history at 38 years old. *See* AR 1503–13; *cf. Trevizo*, 871 F.3d at 683. Therefore, the requirements of the *Garrison* test are met.

Further, the "exceptional facts" of this case "counsel strongly in favor of remanding for immediate payment of benefits." *Trevizo*, 871 F.3d at 683 (citing *Terry v. Sullivan*, 903 F.2d 1273, 1280 (9th Cir. 1990)). Plaintiff has been homeless since she was a teenager, has experienced depression and anxiety since she was a young child, was sexually abused as a teenager, is not a high school graduate, had all six of her children removed from her care by child protective services, first sought benefits more than four years ago, has extensive medical and mental health needs requiring significant care, has lacked medical insurance for necessary treatment, and had one job in her life for only a few days. *See* AR 25, 49, 223–46, 712, 1503–13; *cf. Trevizo*, 871 F.3d at 683. "[F]urther delays at this point would be unduly burdensome." *Terry*, 903 F.2d at 1280; *cf. Vertigan v. Halter*, 260 F.3d 1044, 1047, 1053 (9th Cir. 2001) (exercising discretion to order payment of benefits where the claimant had applied for benefits five years earlier, had only a high school education, and had no transferable work experience).

Accordingly, because Plaintiff satisfies the three-part credit-as-true analysis, and the Court has no doubt that Plaintiff is disabled, the Court reverses the ALJ's decision and remands this case

for an immediate award of benefits.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision.  This matter is **REMANDED** for an award of disability benefits.  The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: February 3, 2026

THOMAS S. HIXSON
United States Magistrate Judge

United States District Court
Northern District of California

21